JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

ATTORNEYS FOR DEFENDANT
    Philip B. Rosen (PR 4116)
    Marjorie Kaye, Jr. (MK 7141)



# JUDGE BUCHWALD

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ANETTA NOWOSIELSKA,

    Plaintiff,

-against-

WANK ADAMS SLAVIN ASSOCIATES
LLP.,

    Defendant

05 CV 9127

\_\_\_\_\_ Civ. \_\_\_\_\_

**NOTICE OF REMOVAL**

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK:**

    **PLEASE TAKE NOTICE** that Defendant, Wank Adams Slavin Associates LLP,
by and through its undersigned attorneys, hereby invokes this Court's jurisdiction under the
provisions of 28 U.S.C. §§ 1331, 1441 and 1446, and states the following grounds in support of
removal of the above-captioned action:

    1. Plaintiff Anetta Nowosielska, by and through her attorneys, Wechsler & Cohen,
        LLP, instituted the above-captioned action in the New York State Supreme
        Court, County of the New York, by filing a Summons and Complaint with that
        Court. The New York State Supreme Court Clerk assigned the action Index
        No. 114371/05 (hereinafter referred to as the "State Action"). A true and
        correct copy of the Summons and Complaint is attached hereto as Exhibit "A"

2    On October 14, 2005, Plaintiff served a copy of the Summons and Complaint on Defendant Wank Adams Slavin Associates LLP, by serving the undersigned counsel for Defendant, Jackson Lewis LLP.

3.    This Court has original jurisdiction over the above-captioned action pursuant to 28 U.S.C. § 1331. Specifically, this Court has jurisdiction because Plaintiff alleges violations of the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et. seq.* Consequently, the State Action may be removed to this Court pursuant to 28 U.S.C. § 1441.

4    This Notice of Removal is submitted without waiving any defenses to Plaintiff's claims or conceding that Plaintiff has pleaded any claim upon which relief may be granted.

5.    This Notice of Removal is being filed with this Court within thirty (30) days after Defendant first received a copy of the initial pleading in the State Action.

6    No proceedings have been had in the State Action. Defendant has not served any Notice of Appearance or other responsive pleading to Plaintiff's Summons and Complaint, or made any appearance whatsoever before the New York State Supreme Court, New York County.

7.    Contemporaneous with the filing of this Notice of Removal with the United States District Court for the Southern District of New York, a Notice of Filing of Notice of Removal was filed with the Clerk of the New York State Supreme Court of the State of New York, New York County.

**WHEREFORE**, Defendant respectfully requests that the State Action be removed from the New York State Supreme Court, New York County.

Respectfully Submitted,

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

By: _____
Philip B  Rosen (PR 4116)
Marjorie Kaye, Jr. (MK 7141)

ATTORNEYS FOR DEFENDANT

Dated:   October 26, 2005
         New York, New York

3

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

ATTORNEYS FOR DEFENDANT
    Philip B. Rosen (PR 4116)
    Marjorie Kaye, Jr. (MK 7141)

**JUDGE BUCHWALD**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

05 CV 9127

|  |  |
|---|---|
| ANETTA NOWOSIELSKA, | Index No. |
| Plaintiff | **CERTIFICATE OF SERVICE** |
| -against- | |
| WANK ADAMS SLAVIN ASSOCIATES LLP, | |
| Defendant/ | |

Marjorie Kaye, Jr., an attorney admitted to practice, hereby certifies as follows:

this 2?th day of October, 2005, I caused a true and correct copy of Defendant's Notice of Filing of Notice of Removal and Notice of Removal in the above-captioned action to be served upon Plaintiff, through her counsel, David M. Wechsler, Esq., by hand delivery, at the following address:

WECHSLER & COHEN, LLP
David B. Wechsler
Marc O. Sheridan
116 John Street, 33rd Floor
New York, New York 10038
212-847-7900

Marjorie Kaye, Jr.

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------ X

ANETTA NOWOSIELSKA,

               Plaintiff,

        -against-

WANK ADAMS SLAVIN ASSOCIATES LLP,

               Defendant

------------------------------------------------------------------ X

**NEW YORK**
**COUNTY CLERK'S OFFICE**

Index No.
Date Purchased    **OCT 13 2005**

Plaintiff designates New York County as
the place of trial NOT COMPARED

WITH COPY FILED

The basis of the venue is that defendant
Wank Adams Slavin Associates LLP
resides in New York County

**SUMMONS**

Plaintiff resides at 77 Warren Street, 2nd
Floor, New York, New York 10007

To the above named Defendant:

    **You are hereby summoned** to answer the complaint in this action and to serve a copy

of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance,

on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of

service (or within 30 days after the service is complete if this summons is not personally delivered to

you within the State of New York); and in case of your failure to appear or answer, judgment will be

taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       October 7, 2005

                   WECHSLER & COHEN, LLP

                   By: David B. Wechsler
                      Marc O. Sheridan
                    *Attorneys for Plaintiff*
                    116 John Street, 33rd Floor
                    New York, New York  10038
                    (212) 847-7900

1

Defendant's address:

WANK ADAMS SLAVIN ASSOCIAIES LLP
740 Broadway
New York, New York  10003

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------- X

ANETTA NOWOSIELSKA : **VERIFIED COMPLAINT**

             Plaintiff, : Index No.:

    -against- :

WANK ADAMS SLAVIN ASSOCIATES LLP :

          Defendant. :

----------------------------------------------------------------- X

NEW YORK
COUNTY CLERK'S OFFICE

Anetta Nowosielska, by her attorneys, Wechsler & Cohen LLP, as and for her Verified

Complaint, alleges upon information and belief as follows:

    1     Anetta Nowosielska ("Anetta") is currently a resident of the City, State and

County of New York, residing at 77 Warren Street, 2nd Floor, New York, New York 10007

    2     Defendant, Wank Adams Slavin Associates LLP ("WASA" or the "Firm") is,

upon information and belief, a limited liability partnership duly organized and existing under the

laws of the State of New York  At relevant times Anetta was employed by WASA located at 740

Broadway, New York, New York

    3     Venue is proper in this Court since, among other things, WASA has a place of

business in New York County, WASA is doing business in New York County, Anetta resides

and was employed by WASA in New York County, and the claims and causes of action arose in

New York County

### BACKGROUND FACTS

    4     Anetta was hired by WASA on August 16, 2004 as a Proposal Manager in

WASA's marketing department, following a successful career in journalism and marketing  In

fact, upon her hire, Susan Steinberg ("Steinberg"), Director of Marketing, remarked that Anetta's

experience and skills gave her an edge over other candidates. Anetta looked forward to a long and rewarding career at WASA

     5     With her experience, Anetta was a resource for developing written proposals, creating and marketing new projects, and facilitating firm-consultant relationships and press distribution. The position of Proposal Manager was a perfect fit and Anetta hit the ground running, frequently and repeatedly receiving praise for her work. At her three-month review, WASA highlighted Anetta's stellar performance, rating her "outstanding" in five out of seven categories, and "very good" in two. *See*, Exhibit "A" hereto. In short, she was an exemplary employee

     6     During the latter months of 2004 into the first quarter of 2005, Anetta continued to contribute to the marketing department by writing proposals, in addition to independently seeking bid opportunities for WASA through research and her own personal contacts in the marketing arena. Because the marketing department was overwhelmed with proposal submissions, this left little time for Anetta to rewrite text available for usage

     7     Recognizing Anetta's skillset, drive, and exemplary performance, however, WASA assigned Anetta to create a monograph for the Historic Preservation Department. The project was intended to spotlight the success of the department. While the monograph was not a novel concept for WASA, it had never been successfully realized at WASA. WASA looked at Anetta to bring it to fruition

     8     Anetta completed the project expeditiously, presenting a proposal to Hazel Ephron ("Ephron"), a senior partner, Pamela Jerome, Steinberg, and Howard Kronwell within one month of receiving her assignment. Through no fault of Anetta's, however, the venture was short-lived. With the arrival of new partners to WASA, the project was terminated and Anetta, though disheartened by the change of events, pressed on. (In addition, upon information and

-2-

belief, Harry Spring, WASA's Managing Partner recognized Anetta's efforts with the monograph project, and spoke with her about developing a book about WASA with her assistance.) Unfortunately, Anetta's continued success with WASA was thwarted.

9      On April 11, 2005, Anetta disclosed to Steinberg that she was pregnant. In response, Steinberg stated, among other things, "Is this what you want?" This comment stunned Anetta, and the conversation was immediately followed by a closed-door discussion between Steinberg and Ephron about Anetta's pregnancy. Later that same day, Annetta disclosed her pregnancy to Carolyn Goodridge ("Goodridge").

10      On April 12, 2005, Steinberg left for a two week vacation. During her absence, Steinberg made arrangements to bring in a former employee Greg Saliovala ("Saliovala"), who Anetta had replaced upon her hire, to assist the marketing department with the overflow of proposals. Notably, when Anetta informed Saliovala that she was pregnant, he acknowledged that he already knew about the pregnancy from Steinberg and that her pregnancy had been a subject of conversation between them.

11      On April 28, 2005, Steinberg returned to the office. Throughout the morning, Anetta met with Steinberg about developments during her absence and discussed future projects. Steinberg gave no indication that anything was amiss. In the late morning, Anetta attended a meeting with a photographer who would be used to discuss some prospects for a new brochure. After her meeting, Anetta returned to her desk to find herself unable to login to her computer. Perplexed, Anetta telephoned the II department about the problem and was told to wait at her desk. Several moments later, she received a telephone call from Steinberg requesting that she meet her in the conference room.

12      When Anetta entered the conference room, she found Steinberg, Ephron, and Goodridge. Ephron began by stating, "I am sure that you are going to be surprised to hear the

- 3 -

news, but you are being let go " Anetta was shocked. When Anetta asked the reason for her termination, Steinberg retorted that there had been a "decreasing quality in her work," referring to a single error on a proposal two months earlier that had been corrected before distribution, and that Anetta had not demonstrated her writing proficiency, although that was one of the skills that had landed her the position.

13    Offended by this overt discriminatory animus, Anetta responded that the reasons were surely pretextual (given her announcement of her pregnancy to all three women *just three weeks earlier*). Anetta immediately noted that it would have been highly unlikely for WASA to have retained an undesirable employee for two months before making a decision to terminate her, and that the opportunity to exercise her writing proficiency had been precluded by the overload of proposals in the marketing department and the limited employees (evidenced by the need for Steinberg to retain additional help during her own absence). Tellingly, Anetta's protests were met with silence.

14    Steinberg's (and thus WASA's) stated reasons are even more suspect given her post-termination, markedly different comments that Anetta was terminated because she was the "newest marketing staff member" and two new partners required an "adjustment in existing staff " *See*, Exhibit "B" annexed hereto This was never referred to before Anetta's firing and is an obvious after-the-fact, defensive fabrication because, upon information and belief, Saliovala took over Annetta's postion at WASA and is being paid at a higher rate despite the Firm's stance that cutbacks were necessary in WASA's marketing department

15    There is no good-faith reason for Anetta's termination or for the retaliatory manner in which she was treated for disclosing her pregnancy The accommodation that would have to be made for Anetta would have been nominal, let alone reasonable and customary. Nor is there availability of comparable employment for Anetta at WASA The inescapable

- 4 -

conclusion from the sequence of events is that the reasons put forth by WASA for Anetta's termination are simply an unlawful pretext for its pregnancy-based discriminatory conduct.

16     With nearly a year of stellar performance under her belt, Anetta looked forward toward working at WASA during her pregnancy, delivering a healthy baby, and then continuing with a career at WASA. The unlawful reasons underlying Anetta's employment termination are transparent and inescapable. Anetta has been jettisoned by WASA into a most difficult job market. Further, given that she is in the early stages of her pregnancy, it will be almost impossible for Anetta to find comparable employment; Anetta will not mislead a prospective employer by silence about her pregnancy.

## FIRST CAUSE OF ACTION

17     Anetta repeats and realleges the allegations contained in paragraphs "1" through "16" hereof as if fully set forth at length herein.

18.     The acts committed by WASA as set forth at length in paragraphs "1" through "16" of the Complaint, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Anetta based on her pregnancy in violation of New York City Administrative Code, Title 8, Chapter 1, §8-107(1)(a) (the "New York City Administrative Code").

19     Anetta, a pregnant woman, is a member of a protected class.

20     The acts of which Anetta complains of herein supporting her claims for pregnancy discrimination took place as a result of her membership in a protected class and all took place while she was an employee of the WASA and in the course of her employment with the WASA.

21     The acts and conduct complained of herein supporting Anetta's claims for pregnancy discrimination were committed by WASA personnel, including but not limited to Steinberg and Ephron, who possessed and maintained supervisory authority over Anetta, and for

- 5 -

whose acts, WASA is liable

22     The acts and conduct complained of herein supporting Anetta's claims for pregnancy discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Anetta's employment, including without limitation her ultimate discharge from WASA

23     As a direct and proximate result of WASA's conduct, Anetta has suffered and will continue to suffer from, among other things, a significant loss of income benefits as well as other losses associated with the effects of WASA's conduct upon Anetta's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein

24     The discriminatory conduct of WASA so degraded Anetta physically, mentally, and emotionally that, as a proximate result of the violation by WASA of her civil rights, Anetta has suffered, and will continue to suffer, among other things, mental and emotional injuries

25     Further, the discriminatory practices engaged in by WASA were done with malice and/or reckless indifference to Anetta's protected rights, such that, in addition to all the measures of relief cited herein to which Anetta is entitled, WASA should be required to pay punitive damages as punishment for its vile, indecent, and reprehensible conduct, in order to deter WASA and others similarly situated from such conduct in the future

26     As direct and proximate result of WASA's violation of Anetta's rights under the New York City Administrative Code, WASA is liable to Anetta for compensatory damages in the sum of $2,000,000 and punitive damages in the sum of $5,000,000 pursuant to the New York City Administrative Code §8·502(a)

27. As direct and proximate result of WASA's violation of Anetta's rights under the New York City Administrative Code, WASA is further liable to Anetta for attorneys' fees pursuant to the New York City Administrative Code §8-502(f).

28. Anetta therefore seeks judgment against WASA on the Second Cause of Action for in the sum of $2,000,000 and punitive damages in the sum of $5,000,000, together with costs, disbursements, and attorneys' fees

## SECOND CAUSE OF ACTION

29. Anetta repeats and realleges the allegations contained in paragraphs "1" through "16" hereof as if fully set forth at length herein

30. The Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U S C §1000 *et seq*, defines "employee welfare benefit plan" as "any plan, fund, or program established or maintained    by an employer or by an employee organization, or by both    for the purpose of providing for participants or their beneficiaries." 29 U S C §1002(1)

31. WASA maintained a severance plan, practice, and/or policy during Anetta's employment, that constitutes an employee benefit plan under the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U S C §1000 *et seq*

32. Upon information and belief, WASA consistently paid severance to its former employees, according to a formula, in the past

33. Upon information and belief, the severance payments due Anetta were or are either allocated by WASA to a special fund and/or a WASA general fund, each of which fall within the protections of ERISA's coverage

34. The source of financing and the procedures for receiving benefits under WASA's severance plan were and are determinable by a reasonable person

35    Anetta was an intended beneficiary or a member of the class of intended beneficiaries of WASA's severance plan

36    Under ERISA, because WASA terminated Anetta's employment, Anetta is entitled to severance pursuant to the most favorable severance arrangement applicable to her, which WASA improperly and unlawfully withheld

37    Pursuant 29 U S C §1132(g)(1), Anetta is entitled to reasonable attorneys' fees and costs in an action to recover benefits, including severance

38    The Court should direct WASA to pay Anetta appropriate severance together with interest and attorneys' fees

WHEREFORE, Anetta demands judgment against WASA on the First Cause of Action in an amount not less than $2,000,000 in compensatory damages and $5,000,000 in punitive damages, together with front pay, back pay, interest on back pay, and attorneys' fees, as permitted by law, appropriate severance on the Second Cause of Action together with interest and attorneys' fees, and for such other and further relief as this Court deems just and proper

Dated: New York, New York
       October 7, 2005

                              WECHSLER & COHEN, LLP

                              By: _____
                                  David B Wechsler
                                  Marc O. Sheridan
                                  *Attorneys for Plaintiff*
                                  116 John Street, 33rd Floor
                                  New York, New York 10038
                                  (212) 847-7900

- 8 -

## VERIFICATION

STATE OF NEW YORK          )
                                 ) ss.:
COUNTY OF NEW YORK      )

ANETTA NOWOSIELSKA, being duly sworn, deposes and says:

I am plaintiff in the within action.  I have read the foregoing Complaint and know

the contents thereof; the same is true based upon my personal knowledge, except as to

those matters alleged upon information and belief and as to those matters I believe them

to be true.

ANETTA NOWOSIELSKA

Sworn to before me this 7
day of September 2005

NOTARY PUBLIC

**JEAN-PAUL JEAN G.**
NOTARY PUBLIC - NEW YORK STATE
N° 01JE6025050
Qualified in Kings County
Commission Expires May 17, 2007

# Exhibit A

MAY 24 2005  2:48PM   Wank Adams Slavin Associates, LLP        NO 0752 ...t.  1

**RECEIVED**

10-22-04   H.R. Mgr

# WASA
## EMPLOYEE PERFORMANCE EVALUATION
## MARKETING DEPARTMENT

| EMPLOYEE'S NAME, (LAST, FIRST, M.I.): | EMPLOYEE ID#: | DATE OF APPOINTMENT OF TITLE: |
|---|---|---|
| NOWOSIELSKA, ANETTA | G 77 | AM 10/23/04 |
| TITLE: | DEPARTMENT/DIVISION/UNIT: | |
| PROMOTIONAL MANAGER | MARKETING | |
| PERIOD COVERED: | PREPARED BY: | DATE: |
| FROM: 8/16/04 TO: OCT 22, 2004 | | 10/22/04 |

| RATINGS | DEFINITIONS |
|---|---|
| OUTSTANDING | PERFORMANCE IS NOTICEABLY EXCEPTIONAL FOR THIS POSITION. ACHIEVEMENTS FAR EXCEED POSITION'S PERFORMANCE OBJECTIVES EXCEPTIONAL CONTRIBUTION MADE TO DEPARTMENTAL, DIVISIONAL, AND/OR COMPANY'S GOALS. |
| VERY GOOD (ABOVE STANDARD) | PERFORMANCE AND CONTRIBUTIONS ARE ABOVE EXPECTANCY FOR THIS POSITION. ACHIEVEMENTS IN MOST CASES EXCEED PERFORMANCE OBJECTIVES |
| SATISFACTORY (MEETS STANDARD) | PERFORMANCE REPRESENTS THE EXPECTED LEVEL FOR THIS POSITION. ACHIEVEMENTS MEET PERFORMANCE OBJECTIVES FULLY OR WITH RARE EXCEPTION. |
| MARGINAL (BELOW STANDARD) | PERFORMANCE IS OFTEN BELOW EXPECTANCY FOR THIS POSITION. RESULTS FREQUENTLY DO NOT MEET PERFORMANCE OBJECTIVES  A REEVALUATION IS REQUIRED AFTER THREE MONTHS |
| UNSATISFACTORY | PERFORMANCE IS CONSISTENTLY BELOW MINIMAL EXPECTANCY FOR THIS POSITION. MUST BE REFERRED TO THE DIRECTOR OF THE HUMAN RESOURCES DIVISION |

MAY. 24. 2005  2:49PM   Wank Adams Slavin Associates, LLP        NU U732   P 2

Page 2 of 6

EMPLOYEE'S NAME: _ANETTA NOWOSIELSKA_

DESCRIBE MAJOR RESPONSIBILITIES AND SKILLS, THE EMPLOYEE'S PERFORMANCE IN EACH AND THEIR RATING:

| | GENERAL SKILLS | PERFORMANCE STANDARDS | DESCRIBE EMPLOYEE'S PERFORMANCE | RATING |
|---|---|---|---|---|
| 1 | MARKETING/ PROMOTIONAL MATERIALS | • Update resumes, project listings, etc.<br>• Research and write new project descriptions.<br>• Assemble brochures<br>• Prepare award submissions.<br>• Create new project pages. | | [X] OUTSTANDING<br>[ ] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |
| 2. | PROPOSAL PREPARATION | • Work with partners to prepare government and "long form" proposals.<br>• Create and improve written proposals.<br>• Complete ancillary forms required by RFP.<br>• Contact sub-consultants and integrate their material into proposal.<br>• Create graphics | : | [ ] OUTSTANDING<br>[X] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |
| 3. | FIRM INTERVIEWS<br><br>N/A TO<br>DATE | • Attend rehearsals as required.<br>• Assist in strategies.<br>• Create boards and handouts<br>• Create canned presentations | AC | [ ] OUTSTANDING<br>[ ] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |
| 4 | WEB RESEARCH/ LEAD DEVELOPMENT | • Research potential clients, projects and competitors<br>• Create lead lists.<br>• Help develop and maintain database | | [ ] OUTSTANDING<br>[X] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |

WASA LLP
Employee Performance Evaluation

MAY 24 2005  2:49PM   Wank Adams Slavin Associates, LLP        NO. 0732    P. 3

EMPLOYEE'S NAME:  ANETTA NOWOSIELSKA

| | | | |
|---|---|---|---|
| | • | | |
| 5. COMMUNICATIONS | • Clearly conveys ideas, directions, opinions internally and externally, and is also an active listener. | | [✓] OUTSTANDING<br>[ ] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |
| 6. ADAPTABILITY | • Able to work effectively under pressure and changing conditions, including performing new and/or multiple responsibilities | | [✓] OUTSTANDING<br>[ ] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |
| 7 WORK ORGANIZATION | • The ability to plan and schedule work activities to achieve maximum productivity, including timely decision making, and application of appropriate policies and standards. The ability to generally organize work assignments to meet agreed upon project and/or firm objectives, including accuracy and completeness. | | [✓] OUTSTANDING<br>[ ] VERY GOOD<br>[ ] SATISFACTORY<br>[ ] MARGINAL<br>[ ] UNSATISFACTORY |

WASA LLP
Employee Performance Evaluation

MAY 24 2005  2:49PM    Wank Adams Slavin Associates, LLP                    NO 0/32   P. 4

Page 4 of 6

EMPLOYEE'S NAME: ANETTA NOWOSIELSKA

**INDIVIDUAL STANDARDS**        Please circle one rating for each of the following

| | | | | |
|---|---|---|---|---|
| A. Willing to take on responsibility | Eager (5) | 4 | 3 | 2 | Reluctant 1 |
| B. Achievement Motivation | High desire to achieve (5) | 4 | 3 | 2 | Little desire 1 |
| C. Team performance | Works well with others (3) | 4 | 3 | 2 | Problems getting along 1 |
| D. Need for supervision | Needs little supervision 5 | (4) | 3 | 2 | Performs poorly without supervision 1 |
| E. Problem solving | Solution Oriented (5) | 4 | 3 | 2 | Unable to solve problems independently 1 |
| F. Meets deadlines | Always (5) | 4 | 3 | 2 | Never 1 |
| G. Attendance | Not a problem (5) | 4 | 3 | 2 | Unreliable attendance 1 |
| H. Punctuality | Always Punctual (5) | 4 | 3 | 2 | Habitual lateness 1 |

WASA LLP
Employee Performance Evaluation

MAY 24 2005  2:50PM    Wank Adams Slavin Associates, LLP        NO 0732   P

Page 5 of 6

EMPLOYEE'S NAME: _Aretta Nowosielska_

IDENTIFY EMPLOYEE'S PRINCIPAL STRENGTHS, SKILLS AND ABILITIES.
COMMENTS MUST BE SPECIFIC AND JOB-RELATED

Aretta is very high energy and eager to tackle projects. She has not been here long, so there is a learning curve she is still in — but her intelligence and ability will eventually put her in greater control of her tasks.

IDENTIFY EMPLOYEE'S PRINCIPAL IMPROVEMENT AND DEVELOPMENT NEEDS
COMMENTS MUST BE SPECIFIC AND JOB-RELATED

Aretta needs to have more time to get acquainted with where we park our information and what we have available.

OVERALL EVALUATION

RATING:
[X] OUTSTANDING    [] VERY GOOD    [] SATISFACTORY    [] MARGINAL    [] UNSATISFACTORY

Specific plan for improvement of the employee's performance or other recommendations including training

WASA LLP
Employee Performance Evaluation

MAY 24, 2005  2:50PM    Wank Adams Slavin Associates, LLP    NO 0732  P 6

Page 6 of 6

EMPLOYEE'S NAME: _NOWOSIELSKA  ANETIA_

The undersigned has completed an evaluation of the employee's performance for this evaluation period

_Susan Sterndey_    _Director of Marketing_    _10/22/04_
Supervisor                     Title                          Date

The undersigned has read this evaluation of his/her performance for this evaluation period, participated in a discussion of the overall job performance and plan for achieving work objectives. A response to this evaluation is __ is not __ attached

_____    MARKETING MANAGER    10.22.04
Employee                     Title                          Date

Date for next evaluation:    ___January, 2005    ___July, 2005    ___October, 2005

# Exhibit B



Harry H. Spring, PE
Hazel H. Ephron, AIA
Leonard Franco, AIA
Jerry S Pessah, P.E.

June 20, 2005

**Re: Anetta Nowosielska**

To Whom It May Concern:

I am writing in reference to Ms. Anetta Nowosielska.

Anetta worked for Wank Adams Slavin Associates LLP for nearly a year and, during that time, brought value to all tasks she undertook.

Tasks include, but were not limited to: proposal writing/managing, awards submission preparation, editing and writing of tear sheets, and on-line research for marketing purposes. Anetta dove with energy and enthusiasm into any project she was given and took great pride in her work.

A couple of months ago, two new partners joined the firm who had their own requirements for marketing staff, which the firm accommodated. Unfortunately, this meant an adjustment in the existing staff and, as the newest marketing staff member, Anetta was let go – without prejudice   I am sure she will make a valuable contribution to any firm who offers her a position.

If you have additional questions, please do not hesitate to call me at 212-420-1160 x 139

Very truly yours,

Susan Steinberg
Director of Marketing